IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNIVERSAL FURNITURE INTERNATIONAL, INC. | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:08CV395 |
| PAUL FRANKEL | ) ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

OSTEEN, JR., District Judge.

On August 4, 2008, Defendant moved under Rule 12(b)(2) of the Federal Rules of Civil Procedure to dismiss Plaintiff's complaint, or, in the alternative, to transfer venue. (Doc. 7.) For the reasons set forth herein, Defendant's motion will be DENIED.

**I.   Facts**

Universal Furniture International, Inc. ("Plaintiff" or "Universal"), a Delaware corporation with its principal place of business in North Carolina, is a manufacturer and wholesaler of home furnishings. (Compl. (Doc. 1) ¶¶ 3, 9.) In 2000, Universal retained a professional furniture design firm, Norman Hekler Design, Inc. ("Norman Hekler"), to design a new collection of dining room and bedroom furniture. (Id. ¶ 10.) Norman Hekler

created designs for two furniture collections (the "Collections") and assigned all rights and interests it had in the designs to Universal. (Id. ¶¶ 10-12, 16-18.) Universal then applied for and obtained copyright registration for the designs that comprised the Collections. (Id. ¶¶ 15, 21.) Universal subsequently manufactured and sold items from the Collections to furniture retailers. (See id.)

On October 22, 2004, Universal filed suit against Collezione Europa USA, Inc. ("Collezione") (suit referred to as "Universal v. Collezione") alleging that Collezione violated its intellectual property rights and engaged in unlawful trade practices. See Universal Furniture Int'l, Inc. v. Collezione Europa, USA, Inc., 599 F.Supp.2d 648 (M.D.N.C. 2009). Universal claimed that Collezione, without Universal's authorization, displayed items from the Collections during the October 2004 International Home Furnishings Market in High Point, North Carolina (the "NC Furnishings Market"). Universal further alleged that Collezione reproduced, sold and distributed those items from Universal's product distribution warehouse in Claremont, North Carolina. The case was ultimately bifurcated into two parts: the first part proceeded as a bench trial to determine liability, while the second part proceeded as a hearing to calculate any resultant damages.

2

The liability phase of Universal v. Collezione concluded on September 14, 2007, when the district court entered its Findings of Fact and Conclusions of Law. The court found that Collezione was liable to Universal on several grounds: (1) false designation/reverse passing off of Universal's furniture in violation of the Lanham Act; (2) infringement of Universal's copyright in violation of the Copyright Act; and (3) reverse passing off of Universal's furniture in violation of North Carolina's Unfair and Deceptive Trade Practices Act. On February 12, 2009, a final judgment was entered against Collezione.

On June 13, 2008, Universal filed a related action against Collezione's co-owner, Paul Frankel ("Defendant" or "Mr. Frankel"). (Compl. (Doc. 1).)[1] This suit is the subject of the instant litigation and the pending motion. Universal now seeks to hold Mr. Frankel personally liable for the very acts that were at issue in Universal v. Collezione. (Id.) Specifically, Universal claims that Mr. Frankel, in his capacity as owner and as the manager responsible for the distribution of furniture from Collezione's warehouse in North Carolina, caused Collezione to display items from the Collections at the October 2004 NC Furnishings Market and subsequently sell and distribute

---

[1] Universal's complaint also names Mr. Frankel's brother, Leonard Frankel, as a defendant. Leonard Frankel co-owns Collezione with Mr. Frankel. To date, Leonard Frankel has not responded to the complaint.

3

reproductions of those items without Universal's authorization. (Id. ¶ 22; Pl.'s Mem. in Opp'n to Def.'s Mot. (Doc. 10) at 4, 16.)

In addition to being Collezione's co-owner, Mr. Frankel is Collezione's Chief Operating Officer, Vice President, Secretary and Treasurer. (Aff. of P. Frankel (Doc. 9) ¶ 19, Ex. A at 3; P. Frankel Dep. (Doc. 11-2) at 18.) In his capacity as Collezione's Chief Operating Officer, Mr. Frankel coordinates the distribution of furniture from Collezione's North Carolina warehouse, (P. Frankel Dep. (Doc. 11-2) at 35, 113), and travels to North Carolina twice a year to attend the NC Furnishings Market, (Aff. of P. Frankel (Doc. 9) ¶ 19). Also, Mr. Frankel handles "the warehousing and order fulfillment side of the business," [t]he purchasing and flow of product side of the business," "invoicing," "phone calls from customers, [and] order inquiries." (Id. at Ex. A at 7.) Mr. Frankel attended the October 2004 NC Furnishings Market, the trade show on which the current action is largely based. (Id. at ¶ 49.) Mr. Frankel is also the co-owner of a company that owns the North Carolina real estate on which Collezione's distribution warehouse is located. (Id. at Ex. A at 16.)

## II. Discussion

In response to Universal's complaint in the instant case, Mr. Frankel filed a motion contending that the court does not

4

have personal jurisdiction over him and that, even if the court does have jurisdiction, the court should transfer venue from the Middle District of North Carolina to the Northern District of New Jersey, New Jersey being the state where Mr. Frankel resides and Collezione is headquartered. (Def.'s Mem. in Supp. of Def.'s Mot. (Doc. 8); Aff. of P. Frankel (Doc. 9) ¶ 2.) The court will address the two parts of Mr. Frankel's motion in turn.

### A. Motion to Dismiss

"When a court's personal jurisdiction is properly challenged by motion under Federal Rule of Civil Procedure 12(b)(2), the jurisdictional question thereby raised is one for the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." Mylan Lab., Inc. v. Akzo, N.V., 2 F.3d 56, 59-60 (4th Cir. 1993). However, as in the present case, when a

> district court decides a pretrial personal jurisdiction dismissal motion without an evidentiary hearing, the plaintiff need prove only a prima facie case of personal jurisdiction. In deciding whether the plaintiff has proved a prima facie case of personal jurisdiction, the district court must draw all reasonable inferences from the proof, and resolve all factual disputes, in the plaintiff's favor.

Id. at 60.

"[F]or a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must

5

comport with the due process requirements of the Fourteenth Amendment." Id. However, because "North Carolina's long-arm statute is construed to extend jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause," the court's normal two-step inquiry merges into one. Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001). That is to say, the court may exercise personal jurisdiction over the defendant if the defendant "has such 'minimal contacts' with the forum state such that 'maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Id. (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

There are two types of personal jurisdiction over a defendant, "specific" and "general." A court has personal jurisdiction over a defendant if either type of jurisdiction exists. See Yates v. Motivation Indus. Equip. Ltd., 38 Fed. Appx. 174, 176 (4th Cir. 2002) ("We view the two species of personal jurisdiction, general and specific, through distinct lenses.").

"Specific jurisdiction" lies where the plaintiff's suit "arises out of the defendant's activities in the forum state." Nichols v. G.D. Searle & Co., 997 F.2d 1195, 199 n.2 (4th Cir. 1993). Courts consider several factors in determining whether specific jurisdiction exists: "(1) the extent to which the

6

defendant has purposefully availed [himself] of the privilege of conducting activities in the state; (2) whether the [plaintiff's] claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 397 (4th Cir. 2003) (citations omitted). "In determining whether jurisdiction is constitutionally reasonable, [courts] evaluate 'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.'" Christian Sci., 259 F.3d at 217 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).

Applying these factors to the present case, this court holds that it has specific jurisdiction over Mr. Frankel. Mr. Frankel purposely availed himself of the privilege of conducting activities in North Carolina. First, Mr. Frankel is the co-owner of the company that owns the Claremont, North Carolina real property on which Collezione's distribution warehouse is located. (See Aff. of P. Frankel (Doc. 9) Ex. A at 16.) Second, Mr. Frankel, as co-owner and employee of Collezione, personally

7

managed the distribution of furniture though Collezione's warehouse in North Carolina. (P. Frankel Dep. (Doc. 11-2) at 15.) In coordinating the distribution of furniture from Collezione's North Carolina warehouse, Mr. Frankel directed contact to North Carolina by controlling the activities of Collezione in the state and utilized infrastructure established or maintained by the state.[2]

Furthermore, Universal's claims arise out of Mr. Frankel's activities in North Carolina. Universal alleges that Mr. Frankel violated its intellectual property rights when he caused Collezione to display certain items of furniture at the October 2004 NC Furnishings Market, a trade show that took place in North Carolina and at which Mr. Frankel was present in furtherance of his ownership interests and employment duties. (See Compl. (Doc. 1) ¶¶ 25-26; P. Frankel Dep. (Doc. 11-2) at 19, 35, 113.) Universal maintains that Mr. Frankel violated its intellectual property rights when he coordinated the distribution of furniture from Collezione's warehouse located in North Carolina. (See id.)

---

[2] It is reasonable to infer that Mr. Frankel personally and purposefully directed the activities of subordinate employees in North Carolina, such that the court concludes that Mr. Frankel directed contacts to North Carolina and those contacts were not random, fortuitous, or attenuated. See ePlus Tech., Inc. v. Aboud, 313 F.3d 166, 176 (4th Cir. 2002) ("[A] defendant should be able to anticipate being brought to court in the forum, in that contacts must be directed at the forum state in more than a random, fortuitous, or attenuated way." (citations and quotation marks omitted)).

Additionally, exercising jurisdiction over Mr. Frankel is constitutionally reasonable. First, as stated, Mr. Frankel, through Collezione, has regularly conducted business in North Carolina. Second, North Carolina has a substantial interest in this case. Universal's principal place of business is in North Carolina and Mr. Frankel's allegedly improper activities occurred in North Carolina or pursuant to privileges bestowed to him, through his corporation, under North Carolina law. (See Compl. (Doc. 1) ¶¶ 3, 25-26.)

The court rejects Mr. Frankel's argument that it lacks personal jurisdiction over him because his contacts with North Carolina were not made in his personal capacity, but instead were made on behalf of Collezione. (See Def.'s Reply to Pl.'s Mem. in Opp'n to Def.'s Mot. (Doc. 12) at 2-3.) A court's "exercise of jurisdiction [is] proper if [the defendant] had sufficient contacts with [the forum state] even if those contacts were made ostensibly on behalf of [a corporation for which the defendant is an agent]." ePlus Tech., Inc. v. Aboud, 313 F.3d 166, 177 (4th Cir. 2002). Contrary to Mr. Frankel's contention, he is not immune to jurisdiction in North Carolina merely because his contacts with the state were made on behalf of Collezione. See Calder v. Jones, 465 U.S. 783, 790 (1984) ("[T]heir status as employees does not somehow insulate them from jurisdiction."). Mr. Frankel's personal and direct contacts with North Carolina,

9

irrespective of whatever contacts Collezione might have had with the state, provide the bases for this court to exercise personal jurisdiction over him.  See id. (An employee's "contacts with [the forum state] are not to be judged according to their employer's activities there."); Columbia Briargate Co. v. First Nat'l Bank in Dallas, 713 F.2d 1052, 1064 (4th Cir. 1983) ("[W]hen a non-resident corporate agent is sued for a tort committed by him in his corporate capacity in the forum state . . . he is properly subject to the jurisdiction of the forum court, provided the long-arm statute of the forum state is co-extensive with the full reach of due process." (emphasis in original omitted)).[3]

### B. Motion to Transfer

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been

---

[3] Mr. Frankel contends that he did not actually participate in the design of any furniture Collezione allegedly produced in violation of Universal's intellectual property rights. (Def.'s Mem. in Supp. of Def.'s Mot. (Doc. 8) at 10.)  While this may be true, the court notes that the claims alleged by Universal involve not only the design of infringing furniture, but also the display and sale of infringing furniture. (See Compl. (Doc. 1) ¶ 22.)  Mr. Frankel admits that the he handled the "the warehousing and order fulfillment side of the business" and "[t]he purchasing and flow of product side of the business." (Aff. of P. Frankel (Doc. 9) Ex. A at 7.)  Accordingly, like in ePlus and Columbia Briargate, for purposes of this motion, the court finds that Mr. Frankel participated in the improper acts alleged and the court's exercise of jurisdiction over the defendant is proper.

10

brought." 28 U.S.C. § 1404(a). "The burden of demonstrating the desirability of transfer for the convenience of the parties and witnesses lies with the moving party, and in considering the motions for transfer, a court should not disturb a plaintiff's choice of forum unless the defendant shows that the balance of convenience heavily favors the defendant's choice." Charles v. Bradley, No. 5:08-CV-124-F, 2009 U.S. Dist. WL 1076771, at *3 (E.D.N.C. Apr. 21, 2009); see also Collins v. Straight, Inc., 748 F.2d 916, 921 (4th Cir. 1984) ("With regard to the question of change of venue, a district court is required to weigh the factors involved and unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." (internal quotation marks and citation omitted)).

> The following factors commonly are considered in ruling on a motion to transfer pursuant to 28 U.S.C. § 1404(a): (1) the plaintiff's initial choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of laws.

Charles, at *2.

The court finds that Mr. Frankel has not met his burden of proving that venue should be transferred from the Middle District

11

of North Carolina to the Northern District of New Jersey pursuant to 28 U.S.C. § 1404(a).  First, Universal's initial choice of forum is the Middle District of North Carolina.  Although not dispositive, this fact weighs heavily against transferring venue. See <u>Gulf Oil v. Gilbert</u>, 330 U.S. 501, 508 (1947)(Under the <u>forum non conveniens</u> doctrine, "[u]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."), <u>superceded on other grounds</u> by 28 U.S.C. § 1404.  Second, judicial economy is served by keeping this case in the Middle District of North Carolina.  The court is familiar with many of the facts and laws that underlie the case.  The claims asserted by Universal in this case mirror those it alleged in its previous action against Collezione.  In addition, as previously discussed, the basic facts in both cases are the same. While it may ultimately be true that <u>Universal v. Collezione</u> is of no or little precedential value in the present matter, this court presided over the injunction and damages phase of that case and extensively reviewed the trial record so as to determine the amount of damages. <u>Universal Furniture</u>, 599 F.Supp.2d at 648. These facts strongly suggest that significant judicial resources will be saved if Mr. Frankel's motion to transfer venue is denied.

Third, North Carolina has a substantial interest in this controversy being resolved in the state.  Universal's principal

12

place of business is in North Carolina and many of Mr. Frankel's allegedly improper acts occurred in North Carolina or pursuant to privileges given to him under North Carolina law. (Compl. (Doc. 1) ¶ 3, 25-26.) In addition, the NC Furnishings Market, the trade show largely at the center of the present case, has a significant impact on the North Carolina economy. See <u>Parham v. Weave Corp.</u>, 323 F.Supp.2d 670, 673 (M.D.N.C. 2004) (referring to the NC Furnishings Market as a major furniture show); <u>Casana Furniture Co. v. Coaster Co. of Am.</u>, No. 1:08CV744, 2009 U.S. Dist. WL 783399, at *4 (M.D.N.C. Mar. 24, 2009) (noting that the NC Furnishings Market is one of the largest furniture trade shows in the world).[4]

    Finally, it will be easier for the parties to access proof if venue remains in the Middle District of North Carolina. The trade show where the furniture at issue was displayed took place in North Carolina. (Aff. of P. Frankel (Doc. 9) Ex. A at 16.) Likewise, the warehouse where the furniture was distributed is located in North Carolina. (P. Frankel Dep. (Doc. 11-2) at 15.) Accordingly, the witnesses to these activities, and any documents created attendant to Mr. Frankel's engagement in these

---

[4] North Carolina's substantial interest in this case also militates against disturbing Universal's choice of forum by granting Mr. Frankel's motion to transfer venue. See <u>Parham v. Weave Corp.</u>, 323 F.Supp.2d 670, 674 (M.D.N.C. 2004) (stating that the deference given to the plaintiff's choice of forum is proportionate to the relation between the forum and the cause of action).

activities, are more likely to be found in North Carolina than New Jersey.

**III. Conclusion**

For the reasons set forth above, Defendant's motion to dismiss Plaintiff's complaint, or, in the alternative, to transfer venue (Doc. 7) is DENIED.

This the 27th day of August 2009.

                                            /s/ William L. Osteen, Jr.
                                            United States District Judge