IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNIVERSAL FURNITURE INTERNATIONAL, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:08CV395 |
| PAUL FRANKEL, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

OSTEEN, JR., District Judge

Presently before the court is Plaintiff's Motion for Summary Judgment (Doc. 33). Plaintiff Universal Furniture International, Inc., ("Plaintiff" or "UFI") has filed a memorandum (Doc. 34) in support of its motion, Defendant Paul Frankel ("Defendant") has filed a memorandum (Doc. 38) in opposition, and Plaintiff has filed a reply (Doc. 44).

Also before the court is Defendant Paul Frankel's Motion for Summary Judgment (Doc. 35). Defendant has filed a memorandum (Doc. 36) in support of his motion, Plaintiff has filed a memorandum (Doc. 40) in opposition, and Defendant has filed a reply (Doc. 42).

Both summary judgment motions are ripe for adjudication.
For the reasons that follow, this court will grant Plaintiff's
Motion for Summary Judgment (Doc. 33) in part and deny it in
part, and this court will grant Defendant Paul Frankel's Motion
for Summary Judgment (Doc. 35) in part and deny it in part.

I.    **BACKGROUND**

Plaintiff is a furniture company that is organized and
exists under the laws of the State of Delaware, with a principal
place of business in High Point, North Carolina. (Compl. (Doc.
1) ¶ 3.) Defendant is a citizen and resident of New Jersey.
(Id. ¶ 4; Answer (Doc. 20) ¶ 4.) At all times relevant to this
case, Defendant has been the Vice President, Chief Operating
Officer, Secretary, Treasurer, and part owner of Collezione
Europa USA, Inc. ("Collezione"), a furniture company that
competes with Plaintiff. (Compl. (Doc. 1) ¶ 4; Answer (Doc. 20)
¶ 4; Aff. Paul Frankel Opp'n Pl.'s Mot. Summ. J. (Doc. 39) ¶ 5.)
Defendant and his brother founded Collezione and are the
company's only officers. (Decl. Annette Lasser Cooley Ex. 1
(Doc. 11-2) at 6, 12.)[1]

In 2004, Plaintiff "filed suit against Collezione asserting
claims of copyright infringement, violation of the Lanham Act,
and violation of North Carolina's Unfair and Deceptive Trade

--------------------------------------------------

[1] All citations in this order to documents filed with the
court refer to the page numbers located at the bottom right-hand
corner of the documents as they appear on CM/ECF.

2

Practices Act." Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc., No. 1:04CV00977, 2007 WL 2712926, at *1 (M.D.N.C. Sept. 14, 2007), aff'd per curiam, 618 F.3d 417 (4th Cir. 2010). In that case ("the Collezione Litigation"), a judge of this court concluded after a bench trial that: 1) Collezione infringed upon Plaintiff's copyright; 2) Collezione passed off Plaintiff's furniture in violation of the Lanham Act; and 3) Collezione's violation of the Lanham Act also constituted an unfair and deceptive trade practice. Id. This court entered judgment in the Collezione Litigation for Plaintiff, and against Collezione, in the amount of $11,225,777.18. See Universal Furniture Int'l, Inc. v. Collezione Europa, USA, Inc., 599 F. Supp. 2d 648, 664 (M.D.N.C. 2009), aff'd per curiam, 618 F.3d 417 (4th Cir. 2010).

Plaintiff filed the Complaint in the instant case in June 2008, asserting false designation of origin, direct and contributory copyright infringement, unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1 ("Unfair and Deceptive Trade Practices Act" or "UDTPA"), and unfair competition under North Carolina common law. (Doc. 1 ¶¶ 27-48.) Plaintiff contends that Defendant is "liable to UFI directly, contributorily, and vicariously, for the acts of copyright infringement, unfair competition, and unfair and deceptive trade

3

practices that this Court found in the Collezione Europa Litigation." (Id. ¶ 2.)

Broadly speaking, Plaintiff's Motion for Summary Judgment (Doc. 33) presents two issues. First, Plaintiff asserts that, under principles of res judicata and collateral estoppel, "all findings of fact, conclusions of law, and other rulings made by this Court in the Collezione Litigation" are binding on Defendant. (Pl.'s Mem. Law Supp. Mot. Summ. J. (Doc. 34) at 2.) Second, Plaintiff argues that "Defendant is personally liable, through principles of direct, contributory, and/or vicarious infringement, for the actions of his company, [Collezione], that were found in the Collezione Litigation to be infringing." (Id.)

Defendant Paul Frankel's Motion for Summary Judgment (Doc. 35), however, contends that Plaintiff cannot prove that Defendant is individually liable for false designation of origin, violation of the North Carolina UDTPA, or common law unfair competition. (See Def.'s Mem. Supp. Mot. Summ. J. (Doc. 36) at 4.) Defendant further contends that Plaintiff cannot prove that Defendant is individually liable under any theory of copyright infringement. (See id.)

## II. LEGAL STANDARD

Summary judgment is appropriate where an examination of the pleadings, affidavits, and other proper discovery materials before the court demonstrates that no genuine issue of material

4

fact exists and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56.  The moving party bears the burden of initially demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party has met that burden, then the nonmoving party must persuade the court that a genuine issue remains for trial by "go[ing] beyond the pleadings" and introducing evidence that establishes "specific facts showing that there is a genuine issue for trial."  Id. at 324 (internal quotation marks and citation omitted).

In considering a motion for summary judgment, the court is not to weigh the evidence, but rather must determine whether there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  The court must view the facts in the light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor.  Id. at 255 (citation omitted).  A mere factual dispute however is insufficient to prevent summary judgment; the fact in question must be material, and the dispute must be genuine.  Fed. R. Civ. P. 56; Anderson, 477 U.S. at 247-48.  Material facts are those facts necessary to establish the elements of a party's cause of action.  Anderson, 477 U.S. at 248.  A dispute is only "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

5

## III. ANALYSIS

### A.  Collateral Estoppel

Plaintiff contends that Defendant is bound by the findings of fact and conclusions of law from the Collezione Litigation. Although Plaintiff references the doctrine of res judicata, Plaintiff offers no argument in favor of applying res judicata in this case.  Instead, Plaintiff's arguments focus on collateral estoppel.  (Pl.'s Mem. Law Supp. Mot. Summ. J. (Doc. 34) at 9-12.)

Application of collateral estoppel, or issue preclusion, "is central to the purpose for which civil courts have been established, the conclusive resolution of disputes."  <u>Montana v. United States</u>, 440 U.S. 147, 153 (1979).  Before this court can apply collateral estoppel to an issue or fact, Plaintiff must demonstrate

> that (1) the issue or fact is identical to the one
> previously litigated; (2) the issue or fact was
> actually resolved in the prior proceeding; (3) the
> issue or fact was critical and necessary to the
> judgment in the prior proceeding; (4) the judgment in
> the prior proceeding is final and valid; and (5) the
> party to be foreclosed by the prior resolution of the
> issue or fact had a full and fair opportunity to
> litigate the issue or fact in the prior proceeding.

<u>In re Microsoft Corp. Antitrust Litig.</u>, 355 F.3d 322, 326 (4th Cir. 2004).

When a plaintiff seeks to estop a defendant from litigating issues that the plaintiff claims were resolved in a prior

6

proceeding, it is known as offensive collateral estoppel. Offensive collateral estoppel presents a heightened possibility of unfairness to the defendant because, for example, the defendant may have had less incentive to contest the earlier action. Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 330-31 (1979). This danger of unfairness "counsels that the criteria for foreclosing a defendant from relitigating an issue or fact be applied strictly." In re Microsoft Corp. Antitrust Litig., 355 F.3d at 327. Further, in deciding whether to permit offensive collateral estoppel,

> a court should consider the following nonexclusive factors: (1) whether the plaintiff could have easily joined in the action against the defendant in the earlier action[;] (2) whether the defendant had an incentive in the prior action to have defended the action fully and vigorously; (3) whether the defendant had won litigation other than the prior action that determined the same issues or facts favorably to the defendant; (4) whether procedural opportunities are available in the pending action that were not available in the prior action.

Id. at 326.

This court begins its analysis of this issue by observing that Plaintiff is attempting in the present litigation to hold Defendant liable for the same actions that were attributed to Collezione in the Collezione Litigation. Plaintiff wishes to prevent relitigation of the issues that established Collezione's liability and to proceed directly to the question of Defendant's personal liability for the acts of Collezione. Thus, this court

7

finds that the issues and facts pertaining to Collezione's underlying liability in this case are identical to those previously litigated. See In re Microsoft Corp. Antitrust Litig., 355 F.3d at 326. In raising the question of Defendant's personal liability, this case undoubtedly presents issues that were not addressed in the Collezione Litigation. Indeed, Plaintiff admits this to be the case and does not assert that the issue of Defendant's personal liability is controlled by collateral estoppel. (Pl.'s Reply Def. Paul Frankel's Opp'n. Mot. Summ. J. (Doc. 44) at 2-3.) Thus, were this court to apply collateral estoppel regarding the findings and conclusions that established Collezione's liability, Defendant would not be precluded from litigating the question of his personal liability for the acts of Collezione.

This court also finds that the issues and facts pertaining to Collezione's underlying liability were "actually resolved in the prior proceeding." See In re Microsoft Corp. Antitrust Litig., 355 F.3d at 326. Further, after reviewing its relevant orders from the Collezione Litigation, see Universal Furniture Int'l, Inc., 599 F. Supp. 2d 648, and Universal Furniture Int'l, Inc., 2007 WL 2712926, this court finds that its findings and conclusions as to liability in that case were "critical and necessary to the judgment in the prior proceeding." See In re Microsoft Corp. Antitrust Litig., 355 F.3d at 326. In addition,

8

this court finds that its judgment in the Collezione Litigation "is final and valid." See id.; see also Fed. R. Civ. P. 54.

Plaintiff must also demonstrate that Defendant "had a full and fair opportunity" in the Collezione Litigation to contest the issues surrounding Collezione's liability. In re Microsoft Corp. Antitrust Litig., 355 F.3d at 326. This court finds that Plaintiff has satisfied that requirement. It is important to note in this regard that collateral estoppel binds not only the parties to the underlying case, but also those in privity with them. Weinberger v. Tucker, 510 F.3d 486, 491 (4th Cir. 2007). "The concept of privity requires an alignment of interests and not an exact identity of parties," and thus the privity inquiry "centers on the closeness of the relationship in question." Id. at 492. The test for privity is "whether the interests of one party are so identified with the interests of another that representation by one party is representation of the other's legal right." Id. at 491 (internal quotation marks omitted).

During the Collezione Litigation, Defendant was the Vice President, Chief Operating Officer, Secretary, Treasurer, and part owner of Collezione. (Compl. (Doc. 1) ¶ 4; Answer (Doc. 20) ¶ 4; Frankel Aff. (Doc. 39) ¶ 5.) Defendant helped found Collezione and is one of only two officers of the company. (Cooley Decl. Ex. 1 (Doc. 11-2) at 6, 12.) It is undisputed that Defendant gave extensive deposition testimony in the Collezione

9

Litigation as Collezione's designated representative under Federal Rule of Civil Procedure 30(b)(6). (See Pl.'s Mem. Law Supp. Mot. Summ. J. (Doc. 34) at 11.) It is also undisputed that Defendant served as Collezione's sole in-court corporate representative throughout the trial. (See id.) In addition, Defendant was the only officer or employee of Collezione to submit sworn statements on Collezione's behalf during the previous litigation. (See id.) Through these actions, Defendant took advantage of "a full and fair opportunity" to litigate the issues pertaining to Collezione's liability for copyright infringement, passing off in violation of the Lanham Act, and unfair and deceptive trade practices.[2] See In re Microsoft Corp. Antitrust Litig., 355 F.3d at 326. Further, based on the nature of Defendant's participation in the Collezione Litigation and his role as an executive officer and part owner of Collezione, this court finds that Defendant's interests were aligned with those of

---

[2] This court recognizes that both the test for privity and the requirement of "a full and fair opportunity to litigate the issue or fact in the prior proceeding," In re Microsoft Corp. Antitrust Litig., 355 F.3d at 326, must be satisfied. Privity is established, in large part, by Defendant's position as Vice President, Chief Operating Officer, Secretary, Treasurer, and part owner of Collezione. Meanwhile, Defendant's participation as Collezione's designated representative under Federal Rule of Civil Procedure 30(b)(6) and its sole in-court corporate representative demonstrates that he had a full and fair opportunity to litigate the facts that ultimately established Collezione's liability for copyright infringement, passing off in violation of the Lanham Act, and unfair and deceptive trade practices.

10

Collezione such that the defense of Collezione that was mounted also constituted representation of Defendant's legal right to contest Collezione's liability. See Weinberger, 510 F.3d at 491; see also Montana, 440 U.S. at 154 ("[O]ne who prosecutes or defends a suit in the name of another to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own . . . is as much bound . . . as he would be if he had been a party to the record." (alterations in original) (internal quotation marks omitted)); United States v. Taylor, 166 F.R.D. 356, 361 ("The designee, in essence, represents the corporation just as an individual represents him or herself at a deposition."), aff'd, 166 F.R.D. 367 (M.D.N.C. 1996); Redman v. Stedman Mfg. Co., 181 F. Supp. 5, 12 (M.D.N.C. 1960) ("It has often been held that a person not technically a party to a judgment may be so directly connected with it by his interest in the result of the litigation and by his active participation in the suit as to be bound by the judgment." (internal quotation marks omitted)).

Based on the foregoing analysis, this court finds that Plaintiff has satisfied the five-pronged test for applying collateral estoppel with respect to issues of Collezione's underlying liability. See In re Microsoft Corp. Antitrust Litig., 355 F.3d at 326. Because Plaintiff seeks offensive application of collateral estoppel, however, this court must give

11

special consideration to the possibility of unfairness to Defendant. This court sees no reason why Plaintiff could not have easily joined Defendant as an individual party to the Collezione Litigation. See In re Microsoft Corp. Antitrust Litig., 355 F.3d at 326. On the other hand, this court finds that Defendant, as an executive officer and part owner who acted as Collezione's corporate representative throughout the previous litigation, had a strong incentive to defend Collezione's underlying liability "fully and vigorously." See id. This court is aware of no prior action in which the issues and facts surrounding Collezione's liability were decided in Collezione's favor. See id.

Defendant, however, has also noted with regard to procedural opportunities that the extent of his personal liability may be limited based on statutes of limitation that were not implicated in the Collezione Litigation. (Def.'s Mem. Law Opp'n Pl.'s Mot. Summ. J. (Doc. 38) at 12-14.) Similarly, Defendant asserts that even if he is personally liable to Plaintiff, he is not liable in the same amount as Collezione because he did not profit to the same extent as Collezione. (Id. at 14.) These arguments concern damages rather than issues of underlying liability, and Defendant has not claimed any procedural opportunities that relate specifically to liability. The application of collateral estoppel as to liability issues would not preclude Defendant from

12

litigating damages in the instant action and taking advantage of
the claimed procedural opportunities during that process.

This court has considered the relevant factors in light of
Plaintiff's attempt to apply collateral estoppel offensively.
With respect to Collezione's underlying liability, this court
finds Defendant's strong incentive to aid in the defense of the
Collezione Litigation to be the most significant consideration.
This court also finds that a general concern for conserving
judicial resources counsels strongly in favor of applying
collateral estoppel to the underlying liability issues. See
Montana, 440 U.S. at 153-54.

As to Collezione's underlying liability, this court finds,
in light of the uncontested nature of the relevant facts, that
Plaintiff has satisfied its burden of demonstrating the absence
of a genuine issue of material fact with respect to the test for
applying collateral estoppel, see In re Microsoft Corp. Antitrust
Litig., 355 F.3d at 326, with respect to the special
considerations that attend offensive collateral estoppel, see
id., and with respect to Defendant's privity with Collezione, see
Weinberger, 510 F.3d at 491-92. Although Defendant asserts that
he did not have control over the defense of the Collezione
Litigation (Frankel Aff. (Doc. 39) ¶¶ 9-12), this court finds no
evidence to suggest that Defendant would have conducted himself
any differently during the liability phase had he been a named

13

party in that prior action.  Thus, even viewing the evidence in the light most favorable to Defendant, see Anderson, 477 U.S. at 255, this court finds that Defendant has not established "specific facts showing that there is a genuine issue for trial." See Celotex Corp., 477 U.S. at 324.

With respect to the amount of damages, on the other hand, this court agrees with Defendant that there are important issues in this case that were not litigated in the Collezione Litigation.  See In re Microsoft Corp. Antitrust Litig., 355 F.3d at 326 (stating that a court cannot apply collateral estoppel to an issue or fact unless that issue or fact is identical to one previously litigated).  Moreover, during the damages phase of the Collezione Litigation, it had already been determined that Collezione engaged in copyright infringement, trademark infringement, and unfair and deceptive trade practices. Defendant's incentive to protect his company's reputation was therefore significantly less during the damages phase than it had been during the liability phase.  See id. (stating that, when asked to apply offensive collateral estoppel, courts should consider whether the defendant had an incentive to defend the prior action fully and vigorously).  It is also notable that during the Collezione Litigation, it could readily have appeared to Defendant that the corporate veil stood between him and personal liability for damages.  Thus, Defendant did not have the

14

same incentive to minimize the damages calculations as he would have had if his own assets had been directly at stake. See id.; see also Weinberger, 510 F.3d at 491 (stating that the test for privity is "whether the interests of one party are so identified with the interests of another that representation by one party is representation of the other's legal right" (internal quotation marks omitted)). For these reasons, this court finds that collateral estoppel should not apply with regard to this court's findings of fact and conclusions of law as to damages from the Collezione Litigation.

This court finds that no genuine issue of material fact exists as to the application of collateral estoppel regarding Collezione's underlying liability to Plaintiff and further finds that such application is appropriate as a matter of law. Thus, with respect to collateral estoppel regarding issues pertaining to Collezione's underlying liability, this court will grant Plaintiff's Motion for Summary Judgment (Doc. 33). The findings of fact and conclusions of law as to liability from the Collezione Litigation are therefore incorporated herein by reference.[3] This court emphasizes, however, that those findings and conclusions are binding in the instant case only to the

---

[3] Those findings of fact and conclusions of law include findings addressing the relevant time period and sales figures used to assess UFI's damages resulting from Collection's violation of the Lanham Act. (See Mem. Op. (Doc. 248) at 7-9, No. 1:04CV00977.)

15

extent they are applicable hereto and that those findings and conclusions shall not prejudice the parties' presentations of evidence or arguments regarding issues that were not decided in the Collezione Litigation. Further, for the reasons stated above, this court finds that application of collateral estoppel is not appropriate regarding issues of damages in this case. This court will therefore deny Plaintiff's Motion for Summary Judgment (Doc. 33) with respect to collateral estoppel as to damages, and this court will hold an evidentiary hearing on the issue of damages at a time to be determined.

In conclusion, therefore, this court adopts specifically the Findings of Fact and Conclusions of Law from <u>Universal Furniture Int'l, Inc.</u>, 2007 WL 2712926, at *1 and those contained in the Memorandum Opinion and Order (Doc. 248 at 7-9, No. 1:04CV00977).

**B.    Defendant's Personal Liability**

In light of the findings noted above, this court turns to an analysis of Defendant's personal liability for the infringing acts as previously found. Plaintiff argues that Defendant is "liable to UFI directly, contributorily, and vicariously, for the acts of copyright infringement, unfair competition, and unfair and deceptive trade practices that this Court found in the Collezione Europa Litigation." (Compl. (Doc. 1) ¶ 2.) Meanwhile, Defendant contends that Plaintiff cannot prove that

16

Defendant is personally liable for any of the asserted claims. (See Def.'s Mem. Supp. Mot. Summ. J. (Doc. 36) at 4.)

As an initial matter, this court notes that Collezione was never found liable for common law unfair competition during the Collezione Litigation. See Universal Furniture Int'l, Inc., 599 F. Supp. 2d 648; Universal Furniture Int'l, Inc., 2007 WL 2712926. Further, Plaintiff's summary judgment filings in this case present no argument and cite no authority for the proposition that Defendant should be found liable for unfair competition under North Carolina common law. Thus, this court deems Plaintiff's Motion for Summary Judgment to be abandoned with respect to Plaintiff's Fourth Claim for Relief, "Common Law Unfair Competition." See, e.g., LR 56.1(d). This court will therefore deny Plaintiff's Motion for Summary Judgment (Doc. 33) and grant Defendant Paul Frankel's Motion for Summary Judgment (Doc. 35) with respect to Defendant's personal liability for unfair competition under North Carolina common law.

Plaintiff's remaining claims for relief, upon which both parties seek summary judgment, allege that Defendant violated the Lanham Act, the Copyright Act, and North Carolina's UDTPA. This court will address those three issues in turn.

17

## 1. Violation of the Lanham Act

In the Collezione Litigation, a judge of this court found that Collezione violated the Lanham Act by displaying pieces of furniture from Plaintiff's English Manor Collection ("EMC") and passing them off as Collezione's own products at the International Home Furnishings Market in High Point ("High Point Market") in October 2004 and by using photographs of Plaintiff's EMC "as advertisements for marketing and sales purposes." Universal Furniture Int'l, Inc., 2007 WL 2712926, at *15.[4] Additionally, Collezione generated sales of furniture as a result of the Lanham Act violation from October 2004 through January 26, 2005. (Mem. Op. (Doc. 248) at 7, No. 1:04CV00977.) In this case, Plaintiff asserts the same claim, a violation of the Lanham Act, 15 U.S.C. § 1125(a). Plaintiff asserts that Defendant is personally liable for Collezione's Lanham Act violation, while Defendant contends that Plaintiff cannot prove personal liability.

In order to establish that Defendant is liable for violating the Lanham Act, Plaintiff must prove "(1) that the furniture at issue originated with Plaintiff; (2) that Defendant falsely designated the origin of the furniture; (3) that the false designation of origin was likely to cause consumer confusion; and

---

[4] Those findings are incorporated by reference and not restated in full here.

18

(4) that Plaintiff was harmed." Universal Furniture Int'l, Inc., 2007 WL 2712926, at *12. A judge of this court found all four elements to be satisfied in the Collezione Litigation, id. at *15, and because elements (1), (3), and (4) are not limited to any specific defendant, those elements are satisfied in the instant case through collateral estoppel. However, the finding in the Collezione Litigation that Collezione falsely designated the origin of Plaintiff's EMC furniture does not necessarily satisfy element (2) as to Defendant in this case. Plaintiff must therefore demonstrate that Defendant played a legally cognizable role in passing off Plaintiff's furniture as products of Collezione. See id. at *12; see also Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 853-54 (1982); Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 265 (9th Cir. 1996); Hard Rock Café Licensing Corp. v. Concession Servs., Inc., 955 F.2d 1143, 1149 (7th Cir. 1992).

Defendant was Vice President, Chief Operating Officer, Secretary, Treasurer, and an owner of Collezione. (Compl. (Doc. 1) ¶ 4; Answer (Doc. 20) ¶ 4; Frankel Aff. (Doc. 39) ¶ 5.) According to Defendant's own deposition testimony, his responsibilities at Collezione were "the operations and financial side of the business." (Cooley Decl. Ex. 1 (Doc. 11-2) at 8.) Defendant described "operations" as "[t]he back office functions, the warehousing and order fulfillment side of the business. The

19

purchasing and flow of product side of the business." (Id.)
Defendant stated that his "back office functions" consisted of
"[i]nvoicing" and "phone calls from customers, order inquiries."
(Id. at 9.) Defendant also gave some clarification as to what he
meant by "warehousing," stating that a "[w]arehouse transaction
is where we buy it, the goods are imported and delivered to our
facility in North Carolina, and then reshipped from North
Carolina to wherever our customers would be." (Id. at 19.)

It is undisputed that Defendant was present as a Collezione
representative at the October 2004 High Point Market where
Collezione displayed Plaintiff's EMC furniture and passed it off
as its own. (Id. at 10-11.) Defendant, however, has given
contradictory statements under oath as to his specific role in
the October 2004 High Point Market, the redesign of the
infringing furniture, and his participation in the marketing of
the infringing furniture, particularly as related to the Lanham
Act claims. Defendant has stated, by affidavit in this case and
deposition in the Collezione Litigation, that he did not
"participate in the decision to change the design after receipt
of Universal's demand letter". (See, Frankel Aff. (Doc. 39) ¶
7.) At trial in the Collezione Litigation, however, Defendant
testified that he was "a co-owner of the business" (Trial Tr.
(Doc. 192) at 48, No. 1:04CV00977) and that he and his brother
"discussed should we do a redesign . . . and I expressed the

20

opinion that we should attempt to resolve this without litigation, by making a redesign of the furniture." (Id. at 49.)

Defendant has also stated, by affidavit in this case, that he did not do anything with respect to the marketing or sale of furniture. (Frankel Aff. (Doc. 39) ¶ 7.) However, in relation to the furniture displayed at the October 2004 High Point Market, Defendant testified at trial in the Collezione Litigation that he was "in the showroom when our photographer took pictures of the goods, and []received pictures back from the photographer, and I'm involved in the distribution of photography to the salesmen." (Trial Tr. (Doc. 192) at 44, No. 1:04CV00977.) Defendant further described how he collected the photographs from his salesmen and placed any related orders received on hold after receipt of Universal's letter in October 2004. (Id. at 46-47.) Defendant testified that after the decision was made to redesign the furniture, the orders that had been received were placed on hold until a redesign of the set was completed.[5] (Id. at 55-57.) The

_____

[5] Defendant's participation in the process of placing orders on hold, as opposed to cancelling those orders, is notable. It appears reasonable to conclude that Defendant intended to profit from sales generated through the October 2004 High Point Market and the related Lanham Act violation by placing the orders on hold and then offering customers a redesigned product. In other words, Defendant may have intended to "try and avoid litigation" (Trial Tr. (Doc. 192) at 42, No. 1:04CV00977) with the response to Universal and the redesign, but Defendant also intended to profit from the Lanham Act violation not only through products sold to Rhodes Furniture (See Mem. Op. (Doc. 248) at 7-9, No. 1:04CV00977) but also by holding orders received from the violation until those orders could be filled with a substitute

customers were then contacted and told that they would be given the opportunity to decide if they wanted to place an order after the furniture was redesigned. (<u>Id.</u> at 56-57.) Defendant personally called at least one of these customers. (<u>Id.</u> at 56.)

This court notes that "[a] genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions" of a party's testimony is correct. <u>Barwick v. Celotex Corp.</u>, 736 F.2d 946, 960 (4th Cir. 1984) (citation omitted). Nevertheless, Defendant's testimony can be read, at least somewhat consistently, by comparison of his general denials with specific facts. For example, it may be true that Defendant did not actually communicate the decision to redesign the infringing furniture to the designer, Aaron Donner. (<u>See</u> Frankel Aff. (Doc. 39) ¶ 7.) Defendant, however, as an equal co-owner[6] of Collezione and the Vice President, Chief

_____

product.

[6] In his affidavit in this case, Defendant states that he "was a minority shareholder of Collezione." (<u>Id.</u> ¶ 3.) During the Collezione trial, however, Defendant stated that he was a "co-owner" of the business. (Trial Tr. (Doc. 192) at 48, No. 1:04CV00977 ("My brother and I – I'm a co-owner of the business, I own an equal amount to my brother.")) Defendant also testified by deposition in that case that the three shareholders of Collezione are Defendant, his brother, and his father. Defendant and his brother own the vast majority of the stock, and his father owns "something like 1.7 percent." (Cooley Decl. Ex. 1 (Doc 11-2) at 13.) Defendant's characterization of himself for purposes of this litigation as a "minority shareholder" is an obvious effort to minimize his control of the corporation. This is an instance in which his affidavit "should be disregarded as a sham issue of fact." <u>Rohrbough v. Wyeth Labs., Inc.</u>, 916 F.2d

22

Operating Officer, Secretary, and Treasurer, did communicate to his brother a request that a redesign take place, and in fact the furniture was redesigned at the direction of Defendant's brother, Leonard Frankel.

It is a little more difficult to reconcile Defendant's statements regarding his claim that he did not participate in marketing and sales with his specific comments as to what actions he did take. Regardless, Defendant, by his own admission, participated in the creation and distribution of the sales photographs from the October 2004 High Point Market displays, communicated to salesmen about those photographs, and, by virtue of his overall responsibilities, participated in the sale of furniture.

The nature of the Lanham Act violation as well as the relationship of the salesmen's photographs to that violation was established in the Collezione Litigation. During that Litigation, a judge of this court credited the testimony of Stephen Giles, a UFI representative who inspected the EMC furniture in Collezione's High Point Market showroom, who stated that "by pulling out drawers, [he] noticed that there were areas indicating that labels had been removed." Universal Furniture

---

970, 975 (4th Cir. 1990). This court finds that Defendant and his brother, Leonard Frankel, owned equal interests in Collezione by virtue of their stock and that those interests constituted a majority ownership, approximately ninety-eight percent.

23

Int'l, Inc., 2007 WL 2712926, at *14 n.13. Mr. Giles also testified that the lot control stickers on the back of two pieces were the same as one he had designed for Plaintiff. Id. at *13. Thus, a close look at the infringing furniture by a person familiar with the industry revealed that something was amiss. A judge of this court also found that Collezione "is known in the furniture industry as a company which imitates or knocks-off the designs of other furniture companies." Id. at *1. Defendant was aware at that time, by his own admission, that Collezione had been sued many times for alleged infringement of intellectual property rights. (Cooley Decl. Ex. 2 (Doc. 11-3) at 4-7.) Furthermore, Defendant has admitted that Collezione intended to sell furniture similar to the Grand Inheritance (GIC) and English Manor Collections of Universal. (Cooley Decl. Ex. 4 (Doc. 11-5) ¶ 7.)

Through his substantive responsibilities and participation in Collezione's business, Defendant had reason to know during the October 2004 High Point Market of the trademark infringement. Furthermore, on or about October 20, 2004, Defendant had actual knowledge by virtue of a letter Universal sent to Collezione alleging infringement. That letter, addressed to Defendant's brother, advised Collezione of the trademark infringement that had occurred at the October 2004 Furniture Market. In the letter, Universal stated:

24

It has just come to our attention that some of your
employees and/or other agents acting on your behalf have
obtained items from two current Universal collections, #474
Grand Inheritance and #609 English Manor (or virtually
identical copies thereof), and shown them at your showroom
at the current International Home Furnishings Market in High
Point, NC as your furniture products. As I am certain you
know, such activity violates Universal's intellectual
property rights in its collections, constitutes unfair
competition, and is unlawful.

(Pl.'s Ex. 24 at 1, No. 1:04CV00977; Doc. 59-1 at 1, No.
1:08CV395.)

Although the record is not entirely clear as to when
Defendant first saw this letter, it is clear that Defendant was
aware of the letter not long after it was sent. Defendant
testified that shortly after he returned from the 2004 High Point
Market he and another employee requested that the sales
representatives return the promotional photographs. (See Trial
Tr. (Doc. 192) at 46-47, No. 1:04CV00977.) Defendant also
testified that this request was made after he had received the
letter from Universal alleging infringement. (Id.) In spite of
Defendant's stated desire to redesign furniture to avoid
litigation, he continued to complete his business
responsibilities for Collezione even after he had actual notice
of the trademark infringing activity. Those responsibilities
included operations and financial, warehousing, order
fulfillment, invoicing, order inquiries, and receiving phone
calls from customers, all during a time period in which the sales
attributable to the Lanham Act violation were made.

25

Thus, from October 2004 through January 2005, Defendant continued to take part in the distribution of Collezione's 20200 furniture collection, which was marketed with the aid of Collezione's false designation of origin.[7] See <u>Universal Furniture Int'l, Inc.</u>, 599 F. Supp. 2d at 662; <u>Universal Furniture Int'l, Inc.</u>, 2007 WL 2712926, at *15. Defendant's participation continued until at least January 2005, the ending date used in the COllezione Litigation to assess UFI's damages under the Lanham Act. (<u>See</u> Cooley Decl. Ex. 4 (Doc. 11-5) at 7-8 (arguing in favor of continued sales and distribution of Collezione's 20200 collection)); <u>see also</u> <u>Universal Furniture Int'l, Inc.</u>, 599 F. Supp. 2d at 662.

The Supreme Court has stated:

[l]iability for trademark infringement can extend beyond those who actually mislabel goods with the mark of another. Even if a manufacturer does not directly control others in the chain of distribution, it can be held responsible for their infringing activities under certain circumstances. Thus, if a manufacturer or

_____

[7] Alternatively, this court finds that Defendant's knowledge of and knowing participation in the Lanham Act violation is established through Defendant's willful blindness. <u>See</u>, <u>Hard Rock Café</u>, 955 F.2d at 1149; <u>Fonovisa, Inc.</u>, 76 F.3d at 265. The Lanham Act violation was found to have resulted in sales to Rhodes Furniture from October 26, 2004, through January 26, 2005. (<u>See</u> Mem. Op. (Doc. 248) at 7-9, 1:04CV00977.) As described above, Defendant was on actual notice of the infringing activity not long after October 20, 2004, and continued supervising and participating in receiving and filling orders from October 2004 through January 2005. Defendant's continued activity after confrontation by Universal over the trademark infringement is further evidence of his intent and his knowing participation in corporate activity at the October 2004 High Point Market.

26

distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorily responsible for any harm done as a result of the deceit.

Inwood Labs., Inc., 456 U.S. at 853-54. By the same logic, in addition to Defendant's direct participation, this court finds that Defendant, a corporate officer who was responsible for "order fulfillment," "flow of product," "[i]nvoicing," and handling customers' "order inquiries," is liable for contributory infringement because he took part in the distribution of a product that he knew and had reason to know was marketed with the aid of a false designation of origin. See 15 U.S.C. § 1125(a)(1) ("Any person who, on or in connection with any goods or services, . . . uses in commerce . . . any false designation of origin . . . shall be liable in a civil action . . . ." (emphasis added)); Fonovisa, Inc., 76 F.3d at 265 (holding that a plaintiff stated a claim for contributory trademark infringement by alleging that a swap meet "disregard[ed] its vendors' blatant trademark infringements with impunity"); Hard Rock Café, 955 F.2d at 1149 (holding that a flea market owner may be liable for trademark violations by its vendors "if it knew or had reason to know of" the violations).

In summary, evidence establishes that Defendant knew, or at a minimum, had reason to know, in or around October 2004 that Collezione passed off Plaintiff's EMC furniture as Collezione's

27

own products at the October 2004 High Point Market and in related advertising materials. Uncontested evidence likewise establishes that Defendant nonetheless continued to participate in the distribution of Collezione products that he knew and had reason to know were marketed with the aid of that false designation of origin. Even viewing the facts in the light most favorable to Defendant, see Anderson, 477 U.S. at 255, this court finds no genuine issue of material fact as to Defendant's personal liability under the Lanham Act. This court also finds that Plaintiff is entitled to judgment on this issue as a matter of law. Therefore, this court will grant Plaintiff's Motion for Summary Judgment (Doc. 33) and deny Defendant Paul Frankel's Motion for Summary Judgment (Doc. 35) with respect to Defendant's personal liability under the Lanham Act.

### 2. Violation of the Copyright Act

In the Collezione Litigation, a judge of this court found that Collezione infringed upon Plaintiff's copyrights "by producing pieces of furniture displaying substantially similar types and arrangements of decorative elements as used in Plaintiff's furniture." Universal Furniture Int'l, Inc., 2007 WL 2712926, at *16. Plaintiff now asserts that Defendant is personally liable for Collezione's violations of the Copyright Act, while Defendant contends that Plaintiff cannot prove personal liability.

28

Section 501 of the Copyright Act provides that "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by section[] 106 . . . is an infringer of the copyright." 17 U.S.C. § 501(a). One of the copyright owner's "exclusive rights" under § 106 is "to distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership." 17 U.S.C. § 106(3).

In the Collezione Litigation, a judge of this court found that Collezione's 20200 furniture collection and certain pieces from Collezione's 20000 collection constituted copies of products for which Plaintiff owned valid copyrights. See Universal Furniture Int'l, Inc., 2007 WL 2712926, at *8, *16. Based on uncontested evidence as set forth above, this court has already found that Defendant participated in the distribution of Collezione's 20200 collection. In light of that same evidence, this court also finds that Defendant took part in distributing Collezione's 20000 collection. Thus, this court finds that Defendant is directly liable for infringing Plaintiff's copyrights. See 17 U.S.C. §§ 106(3), 501(a). Moreover, this court finds that Defendant participated in the full extent of Collezione's distribution of the 20000 and 20200 collections and thereby helped give rise to all of the gross revenues and profits Collezione realized from those collections. (See Cooley Decl. Ex. 6 (Doc. 11-7) (Defendant's declaration from the Collezione

29

Litigation, dated October 9, 2007, arguing in favor of continued sales and distribution of Collezione's 20000 and 20200 collections).) This court therefore finds that Defendant is directly liable for the violations of the Copyright Act that a judge of this court found in the Collezione Litigation.

Alternatively, this court finds that Defendant is vicariously liable for the copyright infringement that a judge of this court found in the Collezione Litigation. "In order to establish vicarious liability, a copyright owner must demonstrate that the entity to be held so liable: (1) possessed the right and ability to supervise the infringing activity; and (2) possessed an obvious and direct financial interest in the exploited copyrighted materials." Nelson-Salabes, Inc. v. Morningside Dev., LLC, 284 F.3d 505, 513 (4th Cir. 2002); see also M.M. Studios Inc. v. Grosser, Ltd., 545 U.S. 913, 930 (2005) ("[One] infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it."). This court reiterates that Collezione's distribution of the 20000 and 20200 collections constitutes infringing activity. See 17 U.S.C. §§ 106(3), 501(a). There can be no credible dispute that Defendant, as one of Collezione's two corporate officers, who by his own testimony is responsible for "order fulfillment," "flow of product," "[i]nvoicing," and handling customers' "order inquiries," had "the right and ability to supervise" the

infringing distribution of Collezione's 20000 and 20200 collections. See Nelson-Salabes, Inc., 284 F.3d at 513. Nor can Defendant plausibly contest that, as one of two corporate officers and a part owner of Collezione, he "possessed an obvious and direct financial interest in the exploited copyrighted materials." See id. Although the record does not reveal whether Defendant did in fact profit, Defendant clearly had a financial interest and profit-making intent as an officer and an owner of Collezione. See Pinkham v. Sara Lee Corp., 983 F.2d 824, 834 (8th Cir. 1992). Collezione's total sales at the time of these transactions were approximately $150 million (Trial Tr. (Doc. 192) at 117, No. 1:04CV00977), and the gross profits from the sale of infringing furniture were in excess of $11 million. This court therefore finds, based on unchallenged evidence, that Defendant is vicariously liable for Collezione's copyright infringement.

For the foregoing reasons, this court finds that Defendant is liable for the violations of the Copyright Act that a judge of this court found in the Collezione Litigation. Therefore, this court will grant Plaintiff's Motion for Summary Judgment (Doc. 33) and deny Defendant Paul Frankel's Motion for Summary Judgment (Doc. 35) with respect to Defendant's personal liability under the Copyright Act.

31

### 3. Violation of the North Carolina Unfair and Deceptive Trade Practices Act

In the Collezione Litigation, a judge of this court found "that the actions taken by [Collezione] that violate the Lanham Act also violate North Carolina's Unfair and Deceptive Trade Practices Act." Universal Furniture Int'l, Inc., 2007 WL 2712926, at *16. Plaintiff now asserts that Defendant is personally liable for Collezione's violations of the North Carolina UDTPA, while Defendant contends that Plaintiff cannot prove personal liability.

Under the UDTPA, "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a). "As used in the UDTPA, the words 'unfair methods of competition' encompass any conduct that a court of equity would consider unfair. More specifically, a practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive." Universal Furniture Int'l, Inc., 618 F.3d 417, 439 (internal quotation marks and citation omitted). Based on these standards, the Fourth Circuit affirmed the conclusion that Collezione's Lanham Act violation also violated the UDTPA. Id. at 440.

For the same reasons that this court has found Defendant personally liable under the Lanham Act, this court also finds that Defendant is personally liable for violating the UDTPA.

32

Therefore, this court will grant Plaintiff's Motion for Summary Judgment (Doc. 33) and deny Defendant Paul Frankel's Motion for Summary Judgment (Doc. 35) with respect to Defendant's personal liability under the UDTPA.

## IV.   CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 33) is **GRANTED IN PART** and **DENIED IN PART** and Defendant Paul Frankel's Motion for Summary Judgment (Doc. 35) is **GRANTED IN PART** and **DENIED IN PART**.

Specifically, **IT IS ORDERED** that, with respect to the issue of collateral estoppel as to Collezione's underlying liability, Plaintiff's Motion for Summary Judgment is **GRANTED**. **IT IS FURTHER ORDERED** that, with respect to the issue of collateral estoppel as to damages, Plaintiff's Motion for Summary Judgment is **DENIED**. This court will hold an evidentiary hearing on the issue of damages at a time to be determined.

**IT IS FURTHER ORDERED** that, with respect to the issue of Defendant's personal liability for unfair competition under North Carolina common law, Plaintiff's Motion for Summary Judgment is **DENIED** and Defendant's Motion for Summary Judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that, with respect to the issues of Defendant's personal liability under the Lanham Act, the Copyright Act, and the North Carolina Unfair and Deceptive Trade

33

Practices Act, Plaintiff's Motion for Summary Judgment is **GRANTED**

and Defendant's Motion for Summary Judgment is **DENIED**.

    This the _____28th_____ day of December 2011.


                                   _William L. Osteen, Jr._
                                  United States District Judge